40    APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Alwart Bros. Coal Co., 177 Ill. App. 40.

## City of Chicago, Defendant in Error, v. Alwart Bros. Coal Company, Plaintiff in Error.

### Gen. No. 16,673.

1. WEIGHTS AND MEASURES—*Chicago ordinance.* Section 2844 of the Code of the City of Chicago, passed March 13, 1911, providing that any person who shall sell any commodity in quantities of less weight than that represented shall be fined, etc., is designed to meet cases of selling by short and false weights and measures of goods to be delivered when sold, as complete acts, and not cases of fraud in delivery from wagons of short weights of goods in considerable bulk which have been previously contracted for and are to be subsequently paid for.

2. MUNICIPAL CORPORATIONS—*weights and measures.* Fraudulent deliveries of coal having been made the subject of particular municipal legislation in the City of Chicago by section 741 of the Revised Municipal Code as amended Nov. 4, 1907, providing that any person selling and delivering coal without a delivery ticket being in possession of the person in charge of the wagon, or delivering less than called for by the ticket, is to be fined, etc., this ordinance governs cases of short weight of coal sold for future delivery, and is exclusive, and contradistinguished from section 2844, these ordinances not being cumulative.

Error to the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed January 27, 1913.

UNDERWOOD & SMYSER and JOHN F. GEETING, for plaintiff in error.

GEORGE H. WHITE, for defendant in error; HENRY M. SELIGMAN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

Alwart Bros. Coal Co., the defendant below, the plaintiff in error here, was found guilty in the Municipal Court of the violation of an ordinance of the City of Chicago and a judgment of twenty-five dollars in favor of the city was entered against it. To reverse

this judgment this writ of error has been sued out. Several questions have been raised and argued before us in the cause, but we shall discuss only one, the correct decision of which in our opinion renders necessary the reversal of the judgment.

The ordinance under which the prosecution of the defendant was brought was one approved April 4, 1907, amending Section 2478 of the Revised Municipal Code of Chicago of 1905, as the same had been previously amended. The matter of the ordinance stands now as Section 2844 of the Chicago Code of 1911, passed March 13, 1911. It was in force in the same words at the time the matters complained of in this prosecution took place and when the action was brought. It is as follows:

"All corn in the ear, potatoes, coal, large fruits, coarse vegetables, and all bulky articles sold or offered for sale by dry measure shall be sold by heaped measure, and all commodities sold by heaped measure shall be duly heaped up in said measure in the form of a cone, the top of the outside measure by which the same shall be measured to be the limit of the base of such cone, and such cone to be as high as the nature of the article to be measured will admit the cone to be heaped.

"Any person or corporation who shall sell or offer for sale any commodity or article of merchandise of any kind whatsoever, whether sold by dry measurement, liquid measurement, lineal measurement, superficial measurement or cubic measurement, or by weight or by any unit of enumeration used in determining or measuring quantity, in quantities of less weight or measure or enumeration than the weight or measure or enumeration represented by the vendor or his agent or employe upon such sale or offer for sale, or who shall sell or offer for sale any commodity in any receptacle containing a less quantity than it is represented at the time of such offer or sale to contain, or any article measured by dry measure that shall not be a heaped up measure in accordance with the provisions of this Section, or who shall sell or offer for sale any article of dry measurement in other than a legal

42 APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Alwart Bros. Coal Co., 177 Ill. App. 40.

dry measure, or any article of liquid measurement in other than a legal liquid measure or in any measure which has not been inspected and sealed by the inspector of weights and measures in accordance with and pursuant to the provisions of this Chapter shall be fined not less than twenty-five dollars nor more than one hundred dollars for each offense.''

We do not think, for reasons hereinafter stated, that this ordinance applies to the matter involved in this case, even if all questions of fact put in issue by the defendant and all other questions of law were decided against it.

On the theory of the prosecution, the default or offense of the corporation sued occurred thus:

September 25, 1908, the County of Cook, as party of the first part, and Alwart Brothers Coal Company as party of the second part, entered into a written contract, by which the Coal Company, in consideration of certain payments to be made by the County of Cook, did ''covenant, promise and agree to furnish and deliver to said County of Cook'' from the date of the contract to March 31, 1909, and for a further period not exceeding ninety days, should the County of Cook so elect, certain kinds of coal within certain defined territorial districts in the City of Chicago, at certain differing prices for the different kinds of coal, per net ton of two thousand pounds, to be ''accepted by said County of Cook and delivered on order of the County Agent of said Districts.'' In the contract were these provisions:

''All coal delivered under this contract shall be forked dry, free from slate and other impurities, and shall be a good stove coal in every respect and shall be delivered in bags or baskets of one hundred pounds each filled in yard at such times and in such quantities and at such places as the Superintendent of Public Service of Cook County may direct. A ton shall be two thousand pounds full weight, and unless otherwise directed an order shall mean the delivery of one thousand pounds of coal, at any one address.

"It is further agreed by and between the parties hereto that if said party of the second part shall fail, neglect or refuse to deliver the said coal or any part thereof of such quality as herein provided or in such quantities or at such times as may be designated by the Superintendent of Public Service, then the party of the second part, by its Board of Commissioners of Cook County, may declare this contract forfeited, either as to a portion of the same or as to the whole thereof, and procure by contract from other parties so much of said coal as said second party shall refuse or fail to deliver, and all costs and expenses occasioned by such default shall be charged against and deducted from any money on hand due and owing to said second party, and in case such cost and expense shall exceed the amount ōn hand so due and owing second party, then such balance shall be deemed a valid and subsisting claim against said second party and its bondsmen.

"It is expressly agreed that said party shall furnish to the Superintendent of Public Service original bills of lading for cars, from which said coal was delivered, and shall attach thereto an affidavit that the coal was delivered by team and was taken from the car mentioned in said bill of lading.

"It is further understood and agreed that said second party shall furnish to the Superintendent of Public Service invoices of each shipment of coal and contract price thereof, and upon approval of the same by the Board of Commissioners of Cook County the same shall be paid in the manner and form provided by law."

This coal for future delivery was bought by the county for the relief of poor persons in the various districts named in the contract, and was to be delivered to them as ordered by the County Agent.

Assuming that all that the evidence with the legitimate inferences from it *tended* to prove against the defendant is to be taken by us as established fact in this case, the County Agent ordered, under the contract, a half ton of coal delivered to a certain recipient of

this relief, and the defendant, through its driver, delivered but 840 pounds, although the lot was delivered as a half ton or a thousand pounds, for which amount the county would be charged.

On the wagon from which this "short" half ton was delivered in eleven bags there were, when the wagon left the yards of the defendant, 89 bags in all. Eight deliveries, supposed to be of half a ton each, were to be made on similar orders, but there were less than four tons on the wagon.

Assuming thus all the charges of the prosecution concerning the transaction proven, we think, nevertheless, that in any event it would be difficult to hold it an offense against the ordinance before set forth.

The first paragraph of the ordinance concerning heaped measures is certainly not involved. By elimination in the second paragraph it is indeed provided that "any  *  *  *  corporation *who shall sell or offer for sale* any commodity,  *  *  *  by weight  *  *  * in quantities of less weight  *  *  *  than the weight represented by the vendor or his agent or employee upon said sale or offer for sale  *  *  *  shall be fined not less than twenty-five dollars  *  *  *  for each offense;" and it is this provision alone that could by any construction said to be applicable to the offense here charged. But it is quite evident, we think, that the ordinance in question taken together was designed to meet cases of *selling* by false weights and measures on the street or in the shop or market place of goods to be delivered when sold; and not cases of fraud in the delivery from wagons of short weights of goods in considerable bulk previously contracted for and to be subsequently paid for.

But whatever might be the applicability of the ordinance in question to other merchandise in which fraud in delivery of this kind is perpetrated, we do not think it is applicable to frauds in the delivery from wagons of coal, charcoal or coke previously contracted for. Such fraudulent deliveries had been made the subject

of particular municipal legislation before the ordinance of April 4, 1907, hereinbefore quoted, was passed, and continued to be so afterward.  In the Revised Municipal Code of Chicago of 1905 (sec. 741), it was provided that any person or corporation engaged in the business of selling coal in the city to be delivered in the city who should deliver to any purchaser a less quantity than two thousand pounds of coal for each ton purchased (or a proportionate amount for any part of a ton), or who should practice any fraud or deceit in the sale or delivery of any coal purchased to be delivered in the city should be fined, etc.  On November 4, 1907, this section of the ordinance was amended, and on February 8, 1909, when the transactions involved took place, there were in force and there are today in force provisions of the Municipal Code requiring that any person or corporation selling and *delivering* or attempting to sell and *deliver* coal, charcoal or coke, without having a delivery ticket showing the net weight to be delivered in the possession of the person in charge of the wagon, shall be fined not less than five nor more than fifty dollars for each offense, and ordaining that "any person, firm or corporation *delivering* or attempting to *deliver* coal, charcoal or coke within the city who shall have upon the wagon or conveyance coal, charcoal or coke of a quantity less than called for by the delivery ticket" provided for "shall be fined not less than twenty-five dollars nor more than two hundred dollars for each offense."

This ordinance, we think, governs such cases as the evidence for the prosecution tended to prove the one at bar to be.  We do not think that the ordinances are cumulative, but mutually exclusive and contradistinguished, the one referring to sales made as complete acts by short measure from wagons, shops, markets and the like; the other to deliveries like the one involved here on contracts previously made.  The wrong ordinance being made the basis of the prosecution in

the bill of particulars in the evidence, and in the find-
ing of the court on which the judgment was entered,
it follows that the judgment is erroneous and it is
reversed.

*Reversed.*